UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
F I L E D
NOV 2 1 2005
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 2005-88

BRIAN ACKERSON                                                PLAINTIFF

VS.                     MEMORANDUM OPINION AND ORDER

JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY                               DEFENDANT

This matter is before the court on the motion for summary judgment of the plaintiff (Doc. 8) and the cross-motion for summary judgment of the defendant (Doc. 9).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298, No. 00-5710 (6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. Aug. 16, 2001)).

In order to qualify for disability benefits, a claimant must establish that he is disabled within the meaning of the Social

1

Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity." Heston, 245 F.3d at 534 (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)( citing 20 C.F.R. § 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, he must demonstrate he suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if his impairment(s) does not prevent him from doing his past relevant

2

work. Id. Lastly, even if the claimant cannot perform his past relevant work, he is not disabled if he can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that he is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, claimant was thirty-two years old. Claimant has a GED, but the evidence establishes that his spelling, arithmetic and word recognition skills are limited to the sixth and seventh grade levels. Claimant has prior relevant work as a janitor, dishwasher, and cook.

The claimant alleges he became disabled on April 15, 2001 because of back pain caused by scoliosis. The claimant was diagnosed with scoliosis at the age of eighteen and he claims that the pain has increased over the years. The claimant testified that he needs a cane to help him walk, but the cane was not prescribed by a doctor. The evidence also demonstrates the claimant has an IQ in the low average range, he has limited math and language skills and he has a speech disorder that makes it difficult for people to understand him.

At the hearing on this application, the ALJ heard testimony from the claimant, claimant's social worker, and a vocational expert. Upon hearing the testimony and reviewing the record, the ALJ performed the requisite 5 step evaluation for determining

3

disability.

At step one, the ALJ determined that claimant had not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the "claimant's scoliosis, adjustment disorder with depressed mood, phonological disorder, and personality disorder are considered "severe."

At step 3, the ALJ found that although claimant has severe impairments, he does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1.

At step 4, the ALJ found the claimant is able to perform his past relevant work as a janitor at the light to medium levels of exertion. Although the ALJ could have ended her analysis after finding claimant was able to perform his past relevant work, she went on to step 5 to show there were also other jobs available to the claimant.

At step 5, the ALJ found that the claimant is capable of making an adjustment to other work which exists in significant numbers in the national economy at the sedentary level, including: hand packer, 174 jobs locally and 21,817 jobs nationally; laborer, 507 jobs locally and 67,500 jobs nationally; and assembler/grader/sorter, 827 jobs locally and 110,537 jobs nationally. Accordingly, the ALJ found the claimant not disabled.

The claimant argues that the ALJ erred at step three in the

4

analysis because she did not consider Listing 12.02. Listing 12.02 provides, in part:

> 12.02 *Organic Mental Disorders*: . . .
>
> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
> 1. Disorientation to time and place; or
> 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
> 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or
> 4. Change in personality; or
> 5. Disturbance in mood; or
> 6. Emotional lability (e.g., explosive temper, outbursts, sudden crying, etc.) And impairment in impulse control; or
> 7. Loss of measured intellectual ability of at least 15 I.Q. points form premorbid levels or overall impairment index clearly within the severely impaired range on neuro-psychological testing, . . ..
> AND
> B. Resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration; . . ..

20 C.F.R. part 404, subpart P, appendix 1, § 12.02.

The claimant asserts that the evidence demonstrates that the claimant has had a loss of measured intellectual ability of at least 15 I.Q. points. In fact, his full scale I.Q. dropped 22 points from 1988 to 2003. In addition, he argues that his memory impairment, disturbance in mood and impairment in impulse control also meet the listing. The claimant, however, does not discuss the second requirement of the listing that he be found to have at least two marked areas of functioning or repeated episodes of decompensation.

5

Although the ALJ did not specifically identify Listing 12.02, her analysis demonstrates that she did consider the listing. First, the ALJ found that the claimant has mild restriction in activities of daily living, moderate limitation in social functioning, and moderate difficulties maintaining attention and concentration. The ALJ did not find the claimant had any marked restrictions. In addition, the ALJ specifically noted that there was no documented episodes of decompensation and none of the "C" criteria was shown to be present. These are specific references to the criteria of Listing 12.02.

Further, the ALJ noted that Dr. McCann's I.Q. testing indicated that the claimant functions in the low average to average range of intellectual functioning and has only some mild symptoms or difficulty with social or occupation functioning. The ALJ also found that the claimant is independent in personal care. Dr. McCann and Mr. Lutkenhoff, his social worker at The Point, both found the claimant to be cooperative. His mother reported that he visits with family and friends and he helps her with taking care of her grandchildren. She also reported that she leaves him a list of chores to complete and he is able to follow the instructions. The claimant testified that he mows both his mother and sister's yards, helps his mother around the house and rides his bike around town several times a day.

The court finds that even if the claimant meets section A, there is no evidence that suggests that the claimant meets or equals section B of Listing 12.02 or, in the alternative, that

6

section C is satisfied. In fact, the claimant does not argue that section C is applicable. Therefore, the court finds that the ALJ's finding that the claimant did not meet or equal Listing 12.02 is supported by substantial evidence.

The claimant also contends that the ALJ did not ask an accurate hypothetical question of the vocational expert because she did not specifically include his speech impairments, psychological impairments, bladder impairments and his back pain.

In the Sixth Circuit, it is well established that a hypothetical must accurately portray the claimant's limitations, but the ALJ is only required to incorporate those limitations that she has accepted as credible. Mcilroy v. Commissioner of Social Security, 2002 WL 1809089 (6th Cir. 2002) (unpublished); Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

The claimant's claim that the ALJ failed to accurately portray claimant's speech limitations is without merit. In the hearing, the ALJ specifically noted that the vocational expert had been present during the claimant's testimony and was able to hear for himself the claimant's speech limitations. (AR 291). The ALJ then told the vocational expert to consider the claimant's phonologic disorder with respect to all of the hypothetical questions. (AR 291). The court finds the ALJ accurately incorporated claimant's speech limitation in her hypothetical questioning.

Furthermore, in all of the hypothetical questions, the ALJ

7

told the vocational expert to consider that the claimant has a sixth grade capability for word recognition and spelling and a seventh grade ability for math. The claimant argues that the ALJ should have incorporated additional psychological restrictions in the hypothetical questions. The claimant does not, however, identify his functional limitations arising from these other impairments, but merely argues the ALJ erred in not including them in the hypothetical questions.

The court finds that the ALJ considered the evidence and incorporated into her hypothetical questions those psychological restrictions that she found credible. Specifically, claimant's limited reading, spelling and math skills as well as his speech disorder. Accordingly, the court finds that the ALJ properly considered the claimant's mental impairments in composing the hypothetical questions.

The claimant also argues that the ALJ did not properly include his physical limitations in the hypothetical questioning. In one hypothetical, however, the ALJ told the vocational expert to incorporate the claimant's limited reading, spelling and math skills, his speech impairment and a physical limitation for light work with occasional climbing, stooping, kneeling, crouching and crawling, but no concentrated exposure to vibration. In limiting the hypothetical to light work, the ALJ considered the fact that claimant's physical impairments may not permit him to work at a more vigorous level.

In another hypothetical, the ALJ told the vocational expert

8

to assume the same non-exertional limitations in climbing, stooping, kneeling, crouching, crawling and exposure to vibration as well as claimant's limited reading, math and speech skills, but to assume that the claimant has the physical ability to perform only sedentary work. This hypothetical considered claimant's testimony with respect to his physical limitations and limited the claimant to sedentary work. Under both scenarios, the vocational expert found that there were jobs available in sufficient number that a claimant with the stated limitations could perform.

The claimant argues that the ALJ should have incorporated into the hypothetical questions the specific problems he was experiencing with his urinary tract infections. There is no evidence, however, that claimant's urinary tract infections cause him any on going physical limitations and no physician has so opined.

Furthermore, the claimant testified that he has had a urinary tract problems for twenty years and that he did work with his condition. (AR 266). The court finds that the ALJ did not err in not directly incorporating claimant's urinary tract infections into the hypothetical questions. The claimant has worked with this impairment in the past and has not demonstrated that it has gotten worse since his last employment. See <u>Auer v. Secretary of Health and Human Services</u>, 830 F.2d 594, 596 (1987).

An ALJ is not required to recite verbatim a medical report to a vocational expert in order to accurately state a claimant's

9

relevant impairments. Webb v. Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004) (citing Foster v. Halter, 279 F.3d 348 (6th Cir. 2001)). Instead, an ALJ need only reference a claimant's limitations when structuring a hypothetical question to a vocational expert. The ALJ is not required to provide the vocational expert with the claimant's specific medical conditions. Id. Although the hypothetical did not recount claimant's specific medical impairments, the hypothetical was a fair and accurate summation of the claimant's abilities and overall mental and physical state.

Accordingly, the assumptions in the ALJ's hypothetical question were adequately supported by the medical record. The Court finds that the medical evidence supports a finding that the hypothetical questions posed to the vocational expert accurately portrayed the limitations the ALJ found credible. Mcilroy v. Commissioner of Social Security, 2002 WL 1809089 (6th Cir. 2002) (unpublished); Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).

The claimant further argues that the ALJ erred in not giving appropriate weight to the medical opinion of examining psychiatrist Dr. McCann. Specifically, claimant argues that the ALJ erred in not finding the claimant disabled because the vocational expert testified that the claimant could not perform any substantial employment if all of Dr. McCann's restrictions were found credible.

Dr. McCann is not claimant's treating physician, but he saw

10

the claimant on one occasion as a consulting physician. Findings of fact made by consulting medical and psychological consultants regarding the nature and severity of an individual's impairments are to be treated as expert opinion evidence. SSR 96-6p. Although an ALJ is not bound by a consultant's findings and is ultimately responsible for determining the claimant's residual functional capacity, the ALJ cannot ignore the consultant's findings. Instead, the ALJ must explain the weight given to these opinions in their decisions. SSR 96-6.

In the case at bar, the ALJ stated, in part:

> When evaluated by Thomas McCann, M.S., Ed.D., for the Department of Vocational Rehabilitation (DVR) in April 2003, the claimant reported no history of emotional difficulties or mental health treatment. Based on the claimant's results on the Minnesota Multiphasic Personality Inventory-Second Edition (MMPI), Dr. McCann['s] impression was that the claimant would tend to have difficulty with situational depression. He indicated that personality testing suggested that the claimant was passive-aggressive in outlook and tended to place a great deal of demands on others for attention and support Dr. McCann also noted below average levels of ambition toward the world of work. His impression was adjustment disorder with depressed mood and personality disorder, not otherwise specified. He estimated the claimant's Global Assessment of Functioning was 68, suggesting only mild symptoms or mild difficulty in social or occupational functioning. (DSM-IV-R) (Exhibit 6F).
>
> School records and I.Q. testing by Dr. McCann indicated that the claimant functions in the low average to average range of intellectual functioning. The claimant reported that he was in special classes for reading. Results on the Wide Range Achievement Test placed the claimant's functioning at the seventh grade level in arithmetic and at the sixth grade level in word recognition and spelling. There has been no change in the claimant's mental abilities. As reflected by his earnings record, he has demonstrated that he has the mental capacity to sustain work. (Exhibits 2D, 1F, and 6F).
>
> The claimant has a history of speech difficulties and has been diagnosed with a phonological disorder. Dr. McCann noted that the claimant's speech was difficult to understand

11

due to articulation problems and slurring. Dr. Fritzhand and a Social Security representative described the claimant's speech as somewhat slurred and hoarse. They reported that they had to ask claimant to repeat himself at times. Robert Longshore, M.D., a consultative for DVR, reported that the claimant had no restriction in his ability to communicate. The claimant has been able to work and interact with others in the past and has no difficulties in his abilities to understand communication. (Exhibits 6E, 1F, 2F, 5F, and 6F).

The court finds that the ALJ clearly did not ignore Mr. McCann's assessment and, to the extent he found it consistent with the evidence, he gave it great weight. The ALJ did not find that the record supported a finding that the claimant's mental abilities limited his employment. The court finds that the ALJ provided sufficient analysis of the evidence, including claimant's activities of daily living, that provided adequate reasons to support the ALJ's finding that the claimant's mental impairment did not render him disabled.

Lastly, the claimant argues that the ALJ erred in evaluating his pain. Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. <u>Kirk v. Secretary of H.H.S.</u>, 667 F.2d 524, 538 (6th Cir. 1981), <u>cert. denied</u>, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. <u>Duncan v. Secretary of</u>

12

*H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). See also *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991).

This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

In the case at bar, the ALJ stated:

> In making this assessment, the undersigned must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929. The claimant's subjective complaints shall be evaluated according to several criteria which are set forth in Social Security Ruling 97-7P. These criteria include: the nature, location, onset, duration, frequency, radiation, and intensity of pain; functional restrictions; and daily activities. The claimant reported that he has low back pain with occasional radiation and weakness in the lower extremities. He described his pain as a constant dull ache. He testified that he has two days per week where he does not want to move and spends the day sitting. He reported that Advil and Tylenol relieve his pain. He has no side effects from these medications. The claimant does not use a heating pad or lumbosacral support. He has received minimal medical treatment. He has never received epidural injections and surgery has not been recommended. Although the claimant used a cane at the hearings, he indicated that this was not prescribed by a physician. He said that sitting and resting help relieve his pain. The claimant testified that he is able to lift and carry a small bag of groceries. He reported no difficulty with sitting and indicated that he can sit and watch television for several hours at a time.

13

> He testified that he could walk ten feet and stand for ten minutes. He mows his mother's and sister's yards on a weekly basis. The claimant is able to perform household chores and shopping. His daily activities include watching television and riding his bike around town. His mother reported that he rode his bike three to four times per day. . . .

The ALJ also discussed the lay opinions of claimant's mother and job coach and found that their statements did not preclude a finding that the claimant could be employable.

The court finds that the ALJ performed the requisite pain analysis, stated sufficient reasons for discrediting claimant's subjective complaints of pain and finding that claimant's pain was not so severe to constitute a disability. See <u>Walters v. Commissioner of Social Security</u>, 127 F.3d 525, 532 (6th Cir. 1997).

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." <u>Alexander v. Apfel</u>, 2001 WL 966284 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,


**IT IS ORDERED** that the motion for summary judgment of the plaintiff (Doc. 9) be, and it hereby is, **denied** and the cross motion for summary judgment of the defendant (Doc. 10) be, and it hereby is, **granted**.  That this matter be, and it is, hereby dismissed and stricken from the docket of this court.

This 16th day of November, 2005.

*William O. Bertelsman*

**WILLIAM O. BERTELSMAN, JUDGE**